**RALPH MYERS CONTRACTING CORP., Appellant, v. BOWERS, Appellee.**

Ohio Appeals, Tenth District, Franklin County.

No. 5981.  Decided November 13, 1958.

Robert Dow Hamilton, Columbus, for appellant.

William Saxbe, Atty. Genl., John M. Tobin, S. Noel Melvin, Asst. Attys. Genl., Columbus, for appellee.

## OPINION

By BRYANT, J.

Ralph Myers Contracting Corporation, appellant, hereinafter called Myers, has appealed directly to this court from the decision of the Board of Tax Appeals. Stanley J. Bowers, Tax Commissioner of Ohio, appellee, previously had made two sales and use tax assesments against Myers totalling $19,710.82. These involved various purchases of property by Myers upon which Myers had paid no sales or use tax, claiming that they were exempt. One of the assessments, D 343, was in the amount of $11,942.06 and covered purchases in the period from July 1, 1953 to November 30, 1954. The other, E 2382, was in the amount of $7,768.76 and covered the period from July 1, 1952 to November 30, 1955.

One assessment by the Tax Commissioner, Assessment D 343, was dated February 4, 1955, and the other assessment, E 2382, was dated March 30, 1956. Each of the assessments was further subdivided between the portions arising under the state retail sales tax law, §5739.13 R. C., and that which arose under the state use tax law, §§5741.11 and 5741.13 R. C. However, no further attention will be given to this differentiation as the rules applicable for sales tax exemption and use tax exemption so far as here involved appear not to be materially different.

After these two assessments had been made, petitions for reassessment were filed by Myers under both numbers, each of them setting forth four grounds for objection to the assessments. The four objections, substantially identical in both petitions, as set forth in the petition in D 343 are as follows:

"1. The purpose of the petitioner in purchasing the items contained in the audits was either to incorporate the items into tangible personal property to be produced for sale by manufacturing, assembling, processing or refining, or,

"2. The purpose of the petitioner was to use or consume the items contained in the audits directly in the production of tangible personal property for sale by manufacturing, processing, or refining;

"3. The petitioner in purchasing the items contained in the audits was acting as an agent or instrumentality of the State of Ohio or one of its political subdivisions, the ultimate consumer herein, and said items are therefore tax exempt;

"4. The assessment is in its entirety contrary to law in other respects apparent upon the record."

The decisions of the Tax Commissioner on both petitions were announced May 16, 1957. They were in identical language in both cases and overruled substantially all of the objections made by Myers. Each decision, after setting forth the four objections herein above quoted, contained the following language:

"At hearing it was pointed out that the exemption claimed is based on a contract with the Ohio Turnpike Commission whereby the petitioner agrees to deliver to said Commission approximately eight and one half miles of completed roadway in accordance with their plans and specifications and that said contract was broken down into unit prices which made separate charges for material and labor.

"It was further stated that the petitioner started the clearing operation which included the preparation of the land (the removal of stumps and trees) for the projected right of way. The earth moving equipment was then utilized to make the necessary excavations or fills after which the dirt was rolled, watered and shaped in preparation for what is known as sub base material. The sub base material is then placed on the grade for paving operations. The petitioner also constructs temporary roads to facilitate the moving of equipment and materials.

"All except a small portion of the items assessed consist of power shovels, earth movers, trucks and equipment for the handling and moving of earth and materials and replacement parts, fuel and supplies for said equipment; right of way fence (temporary) batteries and controllers for said fence; materials for shops for the maintenance and repair of the petitioner's equipment; and trailers used as field offices.

"Insofar as the items in the preceding paragraph are concerned, it is held that they are not used directly in the production of tangible personal property for sale by manufacturing, processing or refining as claimed. The second specific contention that the petitioner, in purchasing the items contained in the audit, was acting as an agent or instrumentality of the State of Ohio or one of its political subdivisions, the ultimate consumer, is held to be without merit."

It is not necessary here to consider the very minor items in which the objections were sustained.

The appeal of Myers to the Board of Tax Appeals consolidated the two assessments under No. 34321. We judicially notice our records sufficiently to point out that a previous order of the Board affirming the Tax Commissioner of Ohio on the same two assessments was appealed to this court and upon order entered by this court was returned in order that the testimony of O. H. Foster might be attached to the file and considered by the Board. This has been done and the Board for the second time has entered its order affirming in full the assessments made by the Tax Commissioner in both cases. This most recent order of the Board was entered upon its journal on May 29, 1958 and notice of appeal therefrom again was filed with this court on June 27, 1958 by a proceeding separate and apart from the earlier notice of appeal. In the brief and assignment of error of Myers, there is a single assignment of error which is as follows:

"The Tax Commissioners and Board of Tax Appeals erred in failing to find that the purpose of appellant in purchasing the items contained in both audits and assessments was to use said items directly in manufacturing, processing or refining, and therefore not subject to the Ohio Sales Tax."

We have searched the file with care and are unable to find any stipulation or finding of facts and therefore it becomes necessary to determine certain facts from the record.

1. Myers is a corporation. It was created under the laws of Indiana on January 3, 1946. (See page 1, question 8, Form 807 B, December 6, 1955, Statement of Ray Colglazier, Secretary, Ralph Myers Contracting Corp., and in D 343, Form 807 B, question 8, dated January 7, 1955

signed by O. H. Foster, Project Manager for Ralph Myers Contracting Corp.) It was assumed during argument that Myers was duly admitted to do business in Ohio as a foreign corporation but it has not been pointed out, nor are we able to find in the record, any showing that such application has been filed or license granted or any statement whatsoever with respect to the county in Ohio in which is located the principal office of Myers, or in which is located the residence of the statutory agent of Myers.

2. Myers had filed certificates of exemption from sales tax according to the file in E 2382 with J. R. Wood Supply Co. of Cincinnati, Ohio Machinery Co. of Cleveland, Motor Rim Mfg. of Cleveland, Standard Oil Co. of Cleveland, Great Lakes Diesel Company of Cleveland, H & R Company Inc., of Elyria, Firestone Stores of Lorain, W. W. Williams Co., of Columbus and the Cantwell Machinery Co. of Columbus, Ohio. The foregoing list is by no means complete but is sufficient to indicate the diversity of vendors from whom purchases were made.

3. Myers was the prime contractor on Ohio Turnpike sections 25 and 26, total amount of contract $7,403,328.40, being for 8.7 miles, which project started in September 1953 and was completed in October 1955 and "on this project this corporation (Myers) completed the earth moving and drainage **and other parts of contract were sublet.**" (Emphasis added.)

Also in 1952, Myers started a project for the Ohio State Highway Department in Brown County, completed in 1953; in December 1954, Myers started a project with the Ohio State Highway Department in Jefferson County near Brilliant, Ohio due to be completed in 1956. (See Form 807 C, Sheet No. 1, being a report by Edgar Gabel, Examiner for the Department of Taxation in E 2382.) To the same general effect, see Form 807 C, page 1, of two pages, being a report signed by Examiner Gabel found in D 343, stating among other things that with reference to the Ohio Turnpike contract "the operation of this contractor is earth moving and **all other parts of the prime contract were sublet** to other contractors." (Emphasis added.)

We therefore conclude, it not being disputed, that the operations of Myers were confined to earth moving and drainage and that the purchases by Myers were in furtherance of such operations as clearing, excavating, filling, drainage and related operations. It would also appear that Myers had nothing whatsoever to do, except as to supervising sub-contractors, with the mixing or pouring of concrete or the building or erection of structures incident to the completed contract, or the purchase of cement, sand, steel, etc. for such paving or structures.

4. Under assessment D 343 the examiner lists nearly one thousand items by date, invoice number, name and address of seller, descriptions of items purchased and the quantities and cost thereof. Many of them are parts for power shovels and others are tires, tubes, antifreeze, water pumps and parts used to repair diesels and earth moving equipment with several pages devoted to parts for caterpillar tractors. These are in addition to approximately $5,300 expended for two Ford trucks on which exemption was claimed and no sales or use taxes were paid.

5. Under assessment E 2382 nearly eight hundred items are individually listed upon which it is claimed sales or use taxes should have been paid showing the date, invoice number, name and address of the seller, a description of the item and the quantities and amount paid therefor. In general it may be said that the items under assessment E 2382 are of the same general character as those referred to under D 343.

As above pointed out it is the claim of Myers that the Tax Commissioner and the Board of Tax Appeals both erred in failing to find that the items upon which the sales and use tax assessments were levied were tax-free for the reason "that the purpose of appellant in purchasing the items * * * was to use said items directly in manufacturing, processing or refining * * *."

As a part of the notice of appeal other grounds are mentioned by Myers. For example, in paragraph six, it was claimed that Myers was exempt from tax because he was acting as an agent or instrumentality of the state or a political subdivision. The Tax Commissioner and the Board of Tax Appeals found there was no merit in this contention. We are unable to find from the record any evidence which indicates that Myers was exercising any of the sovereignty of the state of Ohio and hence we conclude he was not an agent or instrumentality of either the state or local government.

As stated by the examiner, and the matter is not disputed here, Myers was the holder of a contract with the Ohio Turnpike Commission and also held contracts within Brown and Jefferson counties from which the inference is plain that the relationship was that of owner and contractor and not principal and agent. The burden being upon Myers to establish this ground and there being nothing in the record to support the claim, in our opinion, the Tax Commissioner and the Board of Tax Appeals correctly applied the law in their rulings that Myers was not an agent or instrumentality of the state and this objection is overruled.

Myers also claims that the Tax Commissioner and the Board of Tax Appeals were in error in describing a road or highway as real property contending that it should be "considered as tangible personal property." (See paragraph 3, page 2, notice of appeal.) With this contention we cannot agree and we feel that the correct ruling on this question was given by the Tax Commissioner and affirmed by the Board of Tax Appeals. The question remains therefore whether or not from the record it appears that the purpose of Myers in purchasing the items in question was to use them "directly in manufacturing, processing or refining." It would appear that Myers has reference to a portion of the sales tax law, §5739.01, paragraph E, R. C., which provides in part as follows:

"'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

"* * *

"(2) To incorporate the thing transferred as a material or a part, into tangible personal property to be produced for sale by manufactur-

ing, assembling, processing, or refining, or to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing, processing, refining, or mining, * * *."

The brief of the appellant makes reference to this section by number but does not specify the portion referred to. We can only assume therefore that the language which we have quoted above is that referred to by appellant.

At this point it is well to remember that by clear statement of legislative policy, all sales made in Ohio are subject to this tax until the contrary is established. **Sec. 5739.02 R. C.**, provides in part as follows:

"For the purpose of the proper administration of §§5739.01 to 5739.31 inclusive, **R. C.**, and to prevent the evasion of the tax, it is presumed that all sales made in this state are subject to the tax until the contrary is established."

Proceeding now to the question whether earth moving equipment and parts and supplies therefor purchased by Myers for the operations herein above indicated, to wit: grading, filling and related operations, we note that no authority directly in point has been referred to by either side. Myers relies solely upon a decision in a prior case by the Board of Tax Appeals. The trouble with the decision relied upon is that it related to the operations of a contractor who was mixing materials, which were to be laid upon the highway and to become and remain during their useful life, the highway pavement. The decision appears to hold merely that once the processing has begun with respect to such materials that equipment purchased for use prior to the completion of the processing is not taxable.

We are compelled to assume that the operations directly carried on by Myers and here under consideration involve digging up the earth, transporting it and depositing it. It nowhere has been shown that the earth at any time belonged to or was sold by Myers to the Ohio Turnpike Commission or to the political subdivisions. There have been a number of cases involving equipment used in transportation. In the case of **Tri-State Asphalt Corp. v. Glander, 152 Oh St 497**, a crane and bucket had been sold to a contractor for use in transporting sand and slag from freight cars or stock-piles to bins in a portable asphalt plant. It was held that the sales tax was due upon the crane and bucket and that it was not used or consumed directly in the production of tangible personal property for sale by processing and that the processing began after the materials were delivered to the portable asphalt plant.

An early case involving transportation is **Saunders Mills, Inc. v. Evatt, 139 Oh St 227**, in which the taxpayer owned a farm on which alfalfa hay was grown and also a dehydrating plant some distance away in which the alfalfa hay was converted into alfalfa meal. It was held that motor trucks purchased for use solely in transporting such hay over the public roads from the place where grown to the plant for conversion to alfalfa meal were subject to the sales tax and such trucks were not used directly in the production of tangible personal property for sale by manufacturing, processing or farming.

In the case of **The Powhatan Mining Co. v. Peck, 160 Oh St 389**, it

was held that where the taxpayer was engaged in the production of coal and purchased trucks to be used to remove waste material, the purchase of such trucks was not exempt from the sales tax even where it was admitted that the failure to remove the waste would stop the operation of the mine. It was further held that such trucks were not used directly in the production of coal.

In the case of **The Standard Oil Co. v. Peck, 163 Oh St 63**, the taxpayer's roustabout crane and storage tanks were held not directly linked with oil refining and the sales thereof were subject to sales tax.

In the case of **The Huron Fish Co. v. Glander, 146 Oh St 631**, nets purchased by the taxpayer for fishing were held subject to tax.

In the case of **W. E. Anderson & Sons Co. v. Glander, 154 Oh St 561**, the taxpayer had purchased an especially designed motor truck chassis separate and apart from a concrete mixer, which later was attached thereto. The taxpayer's plans called for placing the ingredients into the mixer, mounted upon the motor truck chassis, at the taxpayer's plant and mixing them enroute to destination. It was held that the motor truck chassis and repair parts therefor were primarily devoted to transportation and had but little relationship to the production of the finished product and were therefore subject to tax.

We therefore conclude that the decision of the Tax Commissioner and the affirmance thereof by the Board of Tax Appeals constitute a correct application of the law and the assignment of error with respect thereto is not well taken.

Two other comments seem appropriate here although they are not referred to in the briefs of the appellee. The first is that although this is denominated an appeal on questions of law and fact, this is incorrect. The statute giving rise to an appeal in such cases by §5717.04 R. C., merely says "by appeal" and does not specify which type of appeal. Referring to §2501.02 R. C., there are listed ten classes of cases in which an appeal on law and fact is permitted. They may generally be described equitable actions. This section contains the express mandate that in all other cases this court shall have jurisdiction as an appeal on questions of law only. We have therefore proceeded to treat this matter as an appeal on questions of law only.

The second matter is with reference to the jurisdiction of this court to entertain the case at all. Under the foreign corporation act of this state, **Chapter 1703** and with particular reference to §§1703.03, 1703.04 and 1703.041 R. C., it will be noted that foreign corporations are required to procure a license to transact business and are required among other things to state the name of the county in Ohio in which its principal Ohio office is to be located, and to name a statutory agent residing in the same county in Ohio, if a natural person, or having a business address in the same Ohio county, if a domestic corporation.

Referring back to §5717.04 R. C., we note that where the taxpayer is a corporation and an appeal is taken to the court of appeals, it must be either the county in which the property tax is situate or the county of residence of the statutory agent and in which the corporation has its principal place of business.

It may well be that Myers has been duly and properly granted a license to do business in Ohio. It also may be true that Myers has made proper designation of the county in which is located its principal office in Ohio and the residence of its statutory agent are established. It may also be a fact that Franklin County is the situs of both, as otherwise the appeal cannot be entertained by this court.

The fact is the record is completely silent as to any of this. This would appear to be a serious defect in itself, but appellee has not pressed it. We note that the parties entered into a stipulation filed on September 29, 1958 that this appeal is "a statutory appeal made pursuant to §5717.04 R. C." With that we cannot disagree, but it offers no help in solving the problems in this case.

For the reasons above set forth the proceeding is dismissed at the cost of the appellant and the judgment of the Board and that of the Tax Commissioner of Ohio are hereby affirmed.

PETREE, PJ, MILLER, J, concur.

### CONCURRING OPINION

By MILLER, J.

In concurring with my associates in this opinion, I recognize that under the provisions of §5739.01 (B) R. C., a construction contractor may become the vendor of tangible personal property after it has become a part of the real estate, but the facts in this case reveal that none of the items under consideration were to be incorporated in the improvement itself, but were only to be used in the process of constructing the highway; hence, there could be no separate billing for such items under this section.

Counsel for the appellant relys upon a decision of the Board of Tax Appeals, to wit, Shafer v. Peck, No. 20030, which held that the production of paving material was the production of tangible personal property for sale. Here, however, the items of tangible personal property involved were used directly in the production of paving material. It, therefore, falls within the "direct use" cases, while the items of tangible personal property involved in our appeal were used by the appellant in the preparation of the right-of-way.

None of the items in the assessment had anything to do with the processing of **material** which was used in the construction of the road. Likewise, none of the items had any connection with the production of tangible personal property for sale by manufacturing or processing. They were purchased by the appellant to be used in the performance of its portion of a certain road-building contract.

A road or highway under Ohio law is an item of "real property" unless excepted by §5739.01 (B) R. C., and therefore, could not be considered as tangible personal property. The items against which the assessment was made were for this reason not exempt from a tax under the provisions of §5739.01 (E) (2) R. C.

I, therefore, concur in the majority opinion.